2017 BNH 009

_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

In re:                                                    Bk. No. 16-10602-BAH
                                                          Chapter 11

Hanish, LLC,
                Debtor


*Deborah A. Nottinger, Esq.*               *Jeffrey D. Ganz, Esq.*
*Steven M. Nottinger, Esq.*                *Alexander G. Rheaume, Esq.*
*Nottinger Law, P.L.L.C.*                  *Riemer & Braunstein LLP*
*Nashua, NH*                               *Boston, MA*
*Attorneys for the Debtor*                 *Attorney for Phoenix REO, LLC*


## <u>MEMORANDUM OPINION</u>

## I. INTRODUCTION

The matter before the Court is the "Motion to Alter or Amend Judgment Under Rule 9023 As It Incorporates Rule 59(e)"[1] (the "Motion") filed by the debtor Hanish, LLC (the "Debtor") and the objection thereto[2] (the "Objection") filed by creditor Phoenix REO, LLC ("Phoenix). Through the Motion, the Debtor seeks reconsideration of the Court's order dated May 31, 2017, denying approval of the "Debtor-in-Possession's Third Disclosure Statement for Third Plan of Reorganization Dated March 15, 2017 (Second Amended)"[3] (the "Amended Third Disclosure Statement") based on the patent unconfirmability of the "Debtor-In-Possession['s] Third Plan of

_____

[1] Doc. No. 265.

[2] Doc. No. 269.

[3] Doc. No. 254.

Reorganization Dated March 15, 2017 (Second Amended)"[4] (the "Amended Third Plan") due to the improper classification of the Debtor's unsecured creditors in violation of 11 U.S.C. §§ 1122 and 1129(a)(1).  The Debtor contends the Court erred as a matter of law because 11 U.S.C. § 1123(a)(4) permits the Debtor to provide assenting claimholders less favorable treatment, thus justifying separate classification along those lines.  Phoenix objects, positing that Fed. R. Civ. P. 59(e) does not apply to interlocutory orders and asserting the Motion does not establish that the Court made a manifest error of law.  For the reasons set forth below, the Court will deny the Motion.

## II. JURISDICTION

This Court has authority to exercise jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 157(a), 1334, and U.S. District Court for the District of New Hampshire Local Rule 77.4(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

## III. FACTS

The Debtor filed a voluntary Chapter 11 petition on April 26, 2016.  It owns and operates a Fairfield Inn and Suites by Marriot hotel in Hooksett, New Hampshire.  The Debtor's largest creditor is Phoenix, who holds two fully matured notes that are secured by the Debtor's hotel property (the "Hotel").  The larger of the two notes is also guaranteed by Nayan Patel, the Debtor's principal.  The total amount of Phoenix's allowed claim is $6,732,462.02.[5]  It is undisputed that

---

[4] Doc. No. 253.

[5] See Doc. No. 215.

2

Phoenix's claim is undersecured, although the Debtor asserts that the value of the collateral has increased during the pendency of the case.

The classification and treatment of Phoenix's claim in each formulation of the Debtor's plan has been an ongoing point of contention between the parties.  This is in no small part because Phoenix, to date, has refused to accept any of the Debtor's plans, requiring the Debtor obtain the acceptance of another impaired class in order to achieve confirmation.  See 11 U.S.C. § 1129(a)(10).  Although the Motion seeks reconsideration of an order with respect to the Amended Third Disclosure Statement and Amended Third Plan, a brief history of the Debtor's reorganization efforts is helpful to place the Court's ruling and present dispute in context.

### A. Phoenix Classified as Fully Secured

The first several iterations of the plan shared the following characteristics.[6]  Each placed Phoenix's claim in a single class (Class 2), proposing to treat the entire claim as fully secured despite the fact that the Debtor estimated the Hotel's value was only $5,000,000.00 at that time. The Debtor proposed to pay Phoenix in full through: (1) a lump sum payment of $4,000,000.00 on the effective date from a refinancing that would prime Phoenix's position with respect to the Hotel; (2) interest only adequate protection payments for 10 years; and (3) a balloon payment of the remaining balance at the end of the 10 year period from a refinancing transaction.  General unsecured claims were spilt among two classes: Class 4A, consisting of an administrative convenience class of unsecured claims under $5,000.00 which would be paid 80% of their claim on the effective date;[7] and Class 4, consisting of unsecured claims over $5,000.00 which would be

---

[6] See Doc. Nos. 75, 76, 94, 95, 138, 139, 144.

[7] The Debtor's first plan contemplated a payment of 70% of these claims, but each subsequent plan has increased the dividend to 80%.

paid in full over 7-10 years.  On December 1, 2016, the Court approved the Debtor's second amended disclosure statement without objection from Phoenix and scheduled the second amended plan for a confirmation hearing.

On December 27, 2016, Phoenix filed an objection to confirmation, asserting, *inter alia*, that the Debtor's classification scheme was designed for the sole purpose of gerrymandering an accepting impaired class.[8]  Specifically, Phoenix argued that the Debtor failed to offer a legitimate basis for a separate administrative convenience class, and curiously suggested that the true purpose was to avoid rejection by Phoenix "whose vote could control Class 4," notwithstanding the fact that Phoenix's claim was not in Class 4.[9]  On January 5, 2017, Phoenix cast two votes against the second amended plan—one as a Class 2 secured creditor and one as a Class 4 general unsecured creditor—premised on its asserted undersecured status.  In response, the Debtor moved to have Phoenix's vote designated as solely a Class 2 vote, or, in the alternative, allow the Debtor to separately classify Phoenix's deficiency claim in "Class 4B" and designate Phoenix's Class 4 vote as one in that class.[10]

The Court conducted a two day confirmation hearing on February 16 and 17, 2017.  The Court ruled that it would not honor Phoenix's Class 4 vote on the basis that Phoenix could not vote a classification scheme not reflected in the plan.  At the conclusion of evidence, the Court found that the Debtor had not sustained its burden of demonstrating that the second amended plan was feasible.  In light of this ruling and the need for the Debtor to re-conceptualize its plan, the Court declined to address how Phoenix ought to be classified in a future plan.

---

[8] Doc. No. 165.

[9] Doc. No. 165 at ¶ 40.

[10] Doc. No. 190.

B. Phoenix Classified as Secured with an Unclassified Unsecured Claim

On March 15, 2017, the Debtor filed the first versions of its third disclosure statement and third plan of reorganization.[11]  Notably, the Debtor alleged that a recent appraisal indicated that the Hotel's value had increased to $5,700,000.00 during the pendency of the case.  The classification structure of the third plan remained the same as the prior iterations—Phoenix in Class 2; general unsecured claims under $5,000.00 in Class 4A; and general unsecured claims over $5,000.00 in Class 4.  This time, the Debtor proposed to pay Phoenix in Class 2 as follows: (1) a payment of $1,000,000.00 in cash on the effective date via an equity infusion supplied by Nayan Patel; (2) application of $200,000.00 in adequate protection payments already made; and (3) payment of the remaining $5,532,462.02 in equal monthly installments of principal and interest (at 5%) for 79 months, with the balance paid off through a refinancing at the end of the term.  The proposed treatment of Classes 4A and 4 also remained the same as the prior plans.  Phoenix objected on various grounds,[12] and the Debtor filed revised documents in an attempt to address some of the disclosure issues raised by Phoenix.[13]

On April 12, 2017, the Court conducted a hearing on the revised third disclosure statement. During the hearing, the Court questioned the proposed classification of Phoenix's claim, noting that the third plan, based on the valuation contained therein, appeared to recognize the existence of a separate unsecured claim without classifying it as such outside Class 2.  Phoenix concurred, asserting that the revised third plan classified its two claims in a manner inconsistent with the Bankruptcy Code.  After a colloquy with Debtor's counsel, the Court found that the revised third plan structurally required a classification scheme consistent with the *de facto* bifurcation of

---

[11] Doc. Nos. 228, 229.

[12] Doc. No. 243.

[13] Doc. No. 246, 247.

Phoenix's claim and ordered the Debtor to file further amendments. In closing, the Court expressed its intent to address any classification issues, including any objection to Class 4A on the basis of gerrymandering, at the hearing on the further amended disclosure statement.

### C. Phoenix Classified as Secured with a Separately Classified Unsecured Claim

On April 19, 2017, the Debtor filed the Amended Third Disclosure Statement and the Amended Third Plan. The Amended Third Plan is substantially similar to the prior plan except that Phoenix's unsecured claim is separately classified in Class 2A. Thus, in relevant part, the Amended Third Plan provides that: (1) Phoenix's secured claim in Class 2 will receive monthly payments of principal and interest for 78 months with the balance paid in full from a refinancing at the end of the term; (2) Phoenix's unsecured claim in Class 2A will be paid in full on the effective date from an equity infusion by Nayan Patel; (3) general unsecured claims under $5,000.00 in Class 4A will be paid 80% of their claim on the effective date; and (4) general unsecured claims over $5,000.00 in Class 4 will be paid in full in six and a half years.[14] Neither the Amended Third Disclosure Statement nor the Amended Third Plan explain why the Debtor has placed its unsecured creditors into three separate classes other than to note that Class 4A is "a separate administrative convenience class."[15] Nevertheless, both expressly provide that if separate classification of Class 4A is not permitted, claims in that class will be treated and paid under Class 4. As a result of this classification scheme, Classes 2, 4A, and 4 are impaired and entitled to vote

---

[14] Presumably, the Debtor does not believe any unsecured claims total exactly $5,000.00 as no formulation of the plan has ever provided for them in either Class 4 or Class 4A.

[15] Indeed, neither the Amended Third Plan nor the Amended Third Disclosure Statement even estimate the number of creditors or the total amount of claims included in Class 4A.

to accept or reject the plan, see 11 U.S.C. § 1126(a), while Class 2A is unimpaired and deemed to have accepted the Amended Third Plan.  See 11 U.S.C. § 1126(f).

On May 5, 2017, Phoenix filed an objection to the Amended Third Disclosure Statement, asserting that the Amended Third Plan improperly separately classifies unsecured claims and artificially impairs classes in order to secure the acceptance of an impaired class.[16]  In particular, Phoenix questioned why, in light of the fact that Phoenix's unsecured claim is now less than the $1,000,000.00 being supplied by Nayan Patel, Class 4A is not being paid in full from the remainder of that equity infusion.  In sum, Phoenix argued that all general unsecured claims, including its own unsecured claim and the claims within the administrative convenience class which Phoenix contends the Debtor has failed to justify, must be placed together in Class 4.  Given the size of Phoenix's unsecured claim, there is no dispute that Phoenix's vote would control the outcome of any class in which it is placed, assuming Phoenix could vote.

On May 24, 2017, the Debtor filed a response, urging the Court to defer ruling on classification until a confirmation hearing on the basis that evidence is required to properly weigh all considerations.[17]  The Debtor argued that Phoenix, as a secured creditor and an unimpaired unsecured creditor that will be paid in full on the effective date, lacks standing to object to the classification of other creditors.[18]  Moreover, the Debtor asserted that the classification structure

---

[16] Doc. No. 258.

[17] Doc. No. 263.

[18] As a brief aside, the Court notes that in footnote 2 of the response, the Debtor suggests that Phoenix's unsecured claim "could also be paid in full prior to confirmation, leaving only the secured claim."  This note stands in stark contrast to the Debtor's stated position that Nayan Patel will not contribute the $1,000,000.00 necessary to pay Phoenix's unsecured claim unless the Court approves the third party injunction contained within the Amended Third Plan that will prevent Phoenix from continuing its collection efforts against Mr. Patel's guaranty.

is permissible given that the Bankruptcy Code expressly allows the Debtor to provide less favorable treatment to assenting claimholders.[19]

    D. The Hearing on the Amended Third Disclosure Statement

The Court held a hearing on the Amended Third Disclosure Statement on May 31, 2017. From the outset, the Court expressed concern that the classification of the unsecured claims in the Amended Third Plan appeared designed to engineer an impaired assenting class, particularly in light of the travel of the case. The Court noted that no information is offered in the Amended Third Disclosure Statement to justify the three separate classifications. The Court further questioned why a separate administrative convenience class receiving less than full payment on the effective date was necessary or appropriate, given that "Schedule E/F: Creditors Who Have Unsecured Claims" reflects that there are only thirteen known creditors with claims under $5,000.00, and those claims total little more than $6,000.00.[20]

The Debtor's position was that classification was not an issue in this case because an unimpaired class would, based on voting results for the previous plan, accept the Amended Third Plan, thus satisfying 11 U.S.C. § 1129(a)(10).[21] For this reason and to resolve the objections to the Class 4A, the Debtor stated that it would collapse the administrative convenience class into

---

[19] The Debtor assumes that because Classes 4 and 4A voted in favor of the Debtor's previous plan (which provided the same or substantially similar treatment of their claims as the current plan), they will vote in favor of the Amended Third Plan. This assumption, however, may not be justified in light of the fact that Phoenix was not previously classified as holding an unsecured claim, and Class 2A will receive substantially better treatment than either Class 4 or 4A. Regardless, the voting preference of these classes does not affect the Court's analysis of the classification scheme of the Amended Third Plan.

[20] Doc. No. 31.

[21] At the hearing, the Court understood this to mean that it regardless of whether Class 4A is separate from or included in Class 4, Class 4 remains impaired and will accept the Amended Third Plan. Indeed, the Debtor indicated that it would willing to fold Class 4A into Class 4 if necessary. As will be discussed below, however, it is now clear that the Debtor actually meant that Class 4 will vote to accept the Amended Third Plan even if Phoenix's unsecured claim is placed in Class 4.

Class 4.  Nevertheless, the Debtor repeatedly urged the Court to conclude Phoenix's unimpaired status and inability to vote deprived it of the requisite standing to object to the classification of other general unsecured claims.  The primary thrust of the Debtor's argument was that 11 U.S.C. § 1123(a)(4) allows the Debtor to provide less favorable treatment to Classes 4 and 4A than will be provided to Phoenix in Class 2A if the creditors in those classes agree, which the Debtor presumes they will, noting that none had objected to the Amended Third Disclosure Statement. The Debtor insisted that the disparate treatment of Phoenix from the other general unsecured creditors made the creation of Class 2A proper.  Indeed, the Debtor posited that its reliance on 11 U.S.C. § 1123(a)(4) distinguished the present case from circuit precedent requiring that all creditors of equal rank with claims against the same property should be placed in the same class. Alternatively, the Debtor argued that the existence of the guaranty from Nayan Patel and Phoenix's right to make an election under 11 U.S.C. § 1111(b) rendered Phoenix's unsecured claim legally distinct from other general unsecured claims.

After hearing arguments from both the Debtor and Phoenix, the Court concluded that the classification scheme contained within the Amended Third Plan did not comply with the standards enunciated by the United States Court of Appeals for the First Circuit in Granada Wines v. New England Teamsters & Trucking Indus. Pension Fund, 748 F.2d 42 (1st Cir. 1984).  In so ruling, the Court rejected the Debtor's contentions that the existence of a guaranty or rights under 11 U.S.C. § 1111(b) affords the unsecured claim a different legal character than other general unsecured claims.[22]  Accordingly, the Court denied approval of the Amended Third Disclosure

---

[22] Although the Court did not make this finding, Phoenix argued at the hearing that the unsecured claim is not subject to a guaranty because the Debtor's principal only guaranteed the earlier of the two notes.

Statement because the classification structure rendered the Amended Third Plan patently unconfirmable.[23]

The following day, the Debtor filed the Motion.  On June 9, 2017, Phoenix filed the Objection, asserting that Fed. R. Civ. P. 59(e) does not apply to interlocutory orders and that the Motion merely rehashes arguments the Court heard and rejected.  Having reviewed both, the Court finds that additional oral argument is not necessary for the determination of this matter.

## IV. DISCUSSION

### A. The Rule 59(e) Standard

Motions to alter or amend filed within fourteen days of the entry of an order are brought under Rule 59(e) of the Federal Rules of Civil Procedure ("Rule 59(e)"), which is made applicable in bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 9023.  To succeed on a Rule 59(e) motion, a moving party must establish an intervening change in the controlling law, a clear legal error, or newly discovered evidence.  Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 723 (1st Cir. 2014).  "[A] party cannot use a Rule 59(e) motion to rehash arguments previously rejected."  Soto-Padro v. Pub. Bldgs. Auth., 675 F.3d 1, 9 (1st Cir. 2012); see Nat'l Metal Finishing Co. v. BarclaysAmerican/Commercial, Inc., 899 F.2d 119, 123 (1st Cir. 1990) (Rule 59(e) motions are not appropriate "to repeat old arguments previously considered and

---

[23] Courts have discretion to deny approval of a disclosure statement, even if it contains adequate information, if the related chapter 11 plan of reorganization cannot be confirmed.  In re Felicity Assocs., Inc., 197 B.R. 12, 14 (Bankr. D.R.I. 1996) ("It has become standard Chapter 11 practice that 'when an objection raises substantive plan issues that are normally addressed at confirmation, it is proper to consider and rule upon such issues prior to confirmation, where the proposed plan is arguably unconfirmable on its face.'") (quoting In re Main Road Props., Inc., 144 B.R. 217, 219 (Bankr. D.R.I. 1992)); In re Bjolmes Realty Trust, 134 B.R. 1000, 1002 (Bankr. D. Mass. 1991) ("It is permissible, moreover, for the court to pass upon confirmation issues where, as here, it is contended that the plan is so fatally and obviously flawed that confirmation is impossible."); In re Eastern Main Electric Co-Op, Inc., 125 B.R. 329, 333 (Bankr. D. Me. 1991) ("Such an exercise of discretion is appropriate because undertaking the burden and expense of plan distribution and vote solicitation is unwise and inappropriate if the proposed plan could never legally be confirmed").

rejected."). Indeed, "[d]isagreement with the original ruling of the Court, without more, does not constitute grounds for altering or amending an order." In re Universal Golf Const. Corp., No. BK 05-11379 JMD, 2005 WL 3475777, at *2 (Bankr. D.N.H. Dec. 12, 2005). Nor does a Rule 59(e) motion provide a party a vehicle to undo its own procedural failures or advance arguments that it could have and should have presented prior to judgment. Aybar v. Crispin-Reyes, 118 F.3d 10, 16 (1st Cir. 1997).

As an initial matter, Phoenix argues that "Rule 59(e) does not apply to motions seeking reconsideration of interlocutory orders from which no immediate appeal is available."[24] Orders approving or denying approval of a disclosure statement are interlocutory orders. See Asbestos Claimants v. Aetna Casualty & Surety Co. (In re The Wallace & Gale Co.), 72 F.3d 21, 25 (4th Cir. 1995); Everett v. Perez (In re Perez), 30 F.3d 1209, 1217 (9th Cir. 1994); Adams v. First Fin. Dev. Corp. (In re First Fin. Dev. Corp.), 960 F.2d 23, 26 (5th Cir. 1992). Phoenix, however, reaches the erroneous conclusion that an interlocutory order cannot be reconsidered, quoting a single sentence of Nieves-Luciano v. Hernandez-Torres, 397 F.3d 1, 4 (1st Cir. 2005), out of context. In Nieves-Luciano, the United States Court of Appeals for the First Circuit stated in relevant part:

> Rule 59(e) provides a party with ten days to move to alter or amend a judgment, and the district court may not enlarge the time frame. See Feinstein v. Moses, 951 F.2d 16, 19 (1st Cir. 1991). But Rule 59(e) does not apply to motions for reconsideration of interlocutory orders from which no immediate appeal may be taken, see United States v. Martin, 226 F.3d 1042, 1048 (9th Cir. 2000), including summary judgment denials, see Pacific Union Conf. of Seventh–Day Adventists v. Marshall, 434 U.S. 1305, 1306, 98 S.Ct. 2, 54 L.Ed.2d 17 (1977) (Rehnquist, J., in chambers). *Interlocutory orders such as these "remain open to trial court reconsideration" until the entry of judgment.* Geffon v. Micrion Corp., 249 F.3d 29, 38 (1st Cir. 2001) (quoting Pérez v. Crespo–Guillén, 25 F.3d 40, 42 (1st Cir. 1994)). Thus, the district court could reconsider its initial summary judgment ruling even though appellees did not seek reconsideration within ten days of the ruling.

---

[24] Doc. No. 269 at ¶ 12.

397 F.3d at 4 (emphasis added).  Thus, contrary to Phoenix's assertions, the First Circuit's holding was not that interlocutory orders can never be reconsidered, but the exact opposite—they remain open to reconsideration until entry of a final judgment.[25]

B. Phoenix's Standing to Object to Classification

The Debtor continues to argue that Phoenix has no standing to object to classification.  In support of its position, the Debtor relies on two cases, In re New Midland Plaza Assocs., 247 B.R. 877, 892 (Bankr. S.D. Fla. 2000), and In re Charles Street African Methodist Episcopal Church of Boston, 499 B.R. 66, 96 (Bankr. D. Mass. 2013).  At best, those cases stand for the proposition that a secured creditor lacks standing to object to the classification of an unsecured claim it does not hold.[26]  As such, they are inapposite as Phoenix is both a secured creditor *and* an unsecured creditor.  Moreover, the impropriety of the Debtor's classification scheme *does affect* Phoenix as it is precisely the Debtor's classification of unsecured claims into three separate classes that may allow the Debtor to cram down the Amended Third Plan pursuant to 11 U.S.C. § 1129(a)(10).  The Debtor admits as much in the Motion when it suggests that it placed Phoenix in a class separate from other unsecured creditors because otherwise it would be difficult to get achieve plan confirmation.[27]

---

[25] It is difficult to imagine an order that could neither be appealed to an appellate court as a matter of right nor reconsidered by the trial court.

[26] Notably, in each case, the objected-to classification was one of several accepting impaired classes such as to render any claim of gerrymandering moot.  Thus, the proposition may be even narrower than the Court has articulated.

[27] Doc. No. 265 at ¶ 14  ("The Debtor placed Phoenix in a different class *because* it was being paid in full, is unimpaired, and its vote, if counted at all, is automatically considered an acceptance of the Plan under the Code (no matter what class Phoenix is in), but that does not help the Debtor to get to confirmation.").

Regardless of Phoenix's standing, Court has an independent obligation to ensure that a plan complies with the applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1129(a)(1).

### C. The Standards for Classification of Claims under Section 1122

Before addressing the Debtor's argument that 11 U.S.C. § 1123(a)(4) permits the separate classification of unsecured claims based on their agreement to less favorable treatment, the Court must first consider the standards for the classification of claims under 11 U.S.C. § 1122.  These standards, as described below, formed the basis for the Court's bench ruling denying approval of the Amended Third Disclosure Statement on May 31, 2017.  As a result, they will inform the analysis of whether the Court made a manifest error of law.

Section 1122 of the Bankruptcy Code provides:

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

(b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.  As observed by the United States Court of Appeals for the Sixth Circuit, "[t]he statute, by its express language, only addresses the problem of dissimilar claims being included in the same class.  It does not address the correlative problem . . . of similar claims being put in different classes."  Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co., Inc. (In re U.S. Truck Co., Inc.), 800 F.2d 581, 585 (6th Cir. 1986).  Notably, subsection (a) uses the permissive "may," suggesting that plan proponents enjoy broad freedom in classifying claims.  But unbounded freedom of classification is inconsistent with subsection (b), which requires court approval of an administrative convenience class, and would otherwise render that section

13

superfluous.  See Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture), 995 F.2d 1274, 1278 (5th Cir. 1991), on reh'g (Feb. 27, 1992) ("if § 1122(a) is wholly permissive regarding the creation of such classes, there would be no need for § 1122(b) specifically to authorize a class of smaller unsecured claims . . . ."). As a result, courts have struggled to discern the standard required by 11 U.S.C. § 1122(a), resulting in a split among the circuits. Cf. Granada Wines, 748 F.2d at 46 (all creditors of equal rank with claims against the same property should be placed in the same class) with Barakat v. Life Ins. Co. of Va. (In re Barakat), 99 F.3d 1520, 1526 (9th Cir. 1996) ("absent legitimate business or economic justification, it is impermissible for Debtor to classify [a] deficiency claim separately from general unsecured claims."); Boston Post Rd. Ltd. P'ship v. FDIC (In re Boston Post Rd. Ltd. P'ship), 21 F.3d 477, 483 (2d Cir. 1994) ("debtor must adduce credible proof of a legitimate reason for separate classification of similar claims"); John Hancock Mut. Life Ins. Co. v. Route 37 Bus. Park Assocs., 987 F.2d 154, 158 (3d Cir. 1993) (interpreting 11 U.S.C. § 1122(a) to bar the debtor from "arbitrarily" designating classes or doing so in a manner that "would not serve any legitimate purpose"); In re Greystone III Joint Venture, 995 F.2d at 1278 ("One cannot conclude categorically that § 1122(a) prohibits the formation of different classes from similar types of claims."); see also In re U.S. Truck Co., Inc., 800 F.2d at 585-86 (concluding that "Congress has sent mixed signals on the issue").

The First Circuit follows what is known as the "strict approach" to classification. See Granada Wines, 748 F.2d at 46; see also In re River Valley Fitness One Ltd. P'ship, No. 01-12829-JMD, 2003 WL 22298573, at *8 (Bankr. D.N.H. Sept. 19, 2003); In re CGE Shattuck, LLC, 254 B.R. 5, 11 (Bankr. D.N.H. 2000); In re Barney & Carey Co., 170 B.R. 17, 24 (Bankr. D. Mass. 1994); but see In re Charles St. African Methodist Episcopal Church of Boston, 499 B.R. 66, 96

(Bankr. D. Mass. 2013) (concluding 11 U.S.C. § 1123(a)(4) permits separate classification of similar claims where the class receiving lesser treatment assents).  In Granada Wines, the First Circuit announced that "[t]he general rule regarding classification is 'all creditors of equal rank with claims against the same property should be placed in the same class.'"  Id. at 46 (quoting In re Los Angeles Land and Inv., Ltd., 282 F. Supp. 448, 453 (1968)).  The First Circuit stated further that "[s]eparate classifications for unsecured creditors are only justified 'where the legal character of their claims is such as to accord them a status different from the other unsecured creditors . . . .'"  Id. (quoting Los Angeles Land and Inv., Ltd., 282 F. Supp. at 454).

Given that the First Circuit applies the strictest approach to classification, it necessarily follows that other courts have accepted justifications for separate classification that are simply inconsistent with Granada Wines.  For example, in Steelcase, Inc. v. Johnston (In re Johnston), 21 F.3d 323, 328 (9th Cir. 1994), the United States Court of Appeals for the Ninth Circuit, which applies a business or economic justification standard, concluded that the existence of a personal guaranty from the debtor's principal was a legal attribute that rendered the claim in question dissimilar to other claims.  Although the Ninth Circuit stated its analysis was consistent with Granada Wines, see id., bankruptcy courts within the First Circuit have disagreed.  The prevailing view in this circuit is that a personal guaranty does not alter the legal character of a claim as it relates to the assets of the debtor.  See In re National/Northway Ltd. P'ship, 279 B.R. 17, 30 (Bankr. D. Mass. 2002) (noting "the existence of a personal guarantee, which provides the creditor a means to collecting payment not available to other unsecured creditors, does not affect the legal nature of the guaranteed claim"); Bjolmes Realty Trust, 134 B.R. at 1003 ("[T]he presence of personal guarantees . . . are not enough.  Granada Wines requires a difference in rank concerning rights against the debtor or its property.").  For this reason, the Court was not swayed by the

Debtor's guaranty argument at the hearing on the adequacy of the Amended Third Disclosure Statement.

Notably, the majority of courts, including those that apply less stringent standards than the First Circuit, hold that the ability to make an election under 11 U.S.C. § 1111(b) does not justify the separate classification of unsecured deficiency claims.  See In re Boston Post Rd. Ltd. P'ship, 21 F.3d at 483; In re Greystone III Joint Venture, 995 F.2d at 1278; Travelers Ins. Co. v. Bryson Properties, XVIII (In re Bryson Properties, XVIII), 961 F.2d 496 (4th Cir. 1992).  The United States Court of Appeals for the Fifth Circuit in In re Greystone III Joint Venture, the leading case on this issue, explained the problem with considering rights under 11 U.S.C. § 1111(b) as a legally distinct attribute of a deficiency thusly:

> The purpose of § 1111(b) is to provide an undersecured creditor an election with respect to the treatment of its deficiency claim.  Generally, the creditor may elect recourse status and obtain the right to vote in the unsecured class, or it may elect to forego recourse to gain an allowed secured claim for the entire amount of the debt. If separate classification of unsecured deficiency claims arising from non-recourse debt were permitted solely on the ground that the claim is non-recourse under state law, the right to vote in the unsecured class would be meaningless.  Plan proponents could effectively disenfranchise the holders of such claims by placing them in a separate class and confirming the plan over their objection by cramdown.  With its unsecured voting rights effectively eliminated, the electing creditor's ability to negotiate a satisfactory settlement of either its secured or unsecured claims would be seriously undercut.  It seems likely that the creditor would often have to "elect" to take an allowed secured claim under § 1111(b)(2) in the hope that the value of the collateral would increase after the case is closed.  Thus, the election under § 1111(b) would be essentially meaningless. We believe Congress did not intend this result.

Id. at 1279–80 (footnote omitted).[28]  Most, though not all, courts within the First Circuit have sided with the majority.  See Banc of Am. Commercial Fin. Corp. v. CGE Shattuck, LLC (In re CGE Shattuck, LLC), No. 99-12287-JMD, 1999 WL 33457789, at *4 (Bankr. D.N.H. Dec. 20, 1999);

_____

[28] Phoenix argued in its objection and at the hearing that the Debtor has made an election under 11 U.S.C. § 1111(b) illusory in this case because the Debtor proposes to pay Phoenix's unsecured claim in full on the proposed effective date of the Plan.

16

Barney & Carey Co., 170 B.R. at 24; In re Cranberry Hill Assocs. Ltd. P'ship, 150 B.R. 289, 290 (Bankr. D. Mass. 1993); In re Main Road Properties, Inc., 144 B.R. 217, 220–21 (Bankr. D.R.I. 1992); In re Cantonwood Assocs. Ltd. P'ship, 138 B.R. 648, 653–57 (Bankr. D. Mass. 1992); but see In re Gato Realty Trust Corp., 183 B.R. 15, 20 (Bankr. D. Mass. 1995); In re Bjolmes Realty Trust, 134 B.R. at 1002–04.  At the hearing on the adequacy of the Amended Third Disclosure Statement, the Court adopted the majority view.

Whatever uncertainty exists in the caselaw, there is "one clear rule" to which all courts adhere—"*thou shalt not classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan.*"  In re Greystone III Joint Venture, 995 F.2d at 1279 (citing In re U.S. Truck Co., 800 F.2d at 586) (emphasis added).  While some courts have noted that this "one clear rule" may be difficult to apply because "[s]imilarity is not a precise relationship," see In re Woodbrook, Assocs., 19 F.3d 312, 318 (7th Cir. 1994), the First Circuit's strict construction of 11 U.S.C. § 1122(a) makes detecting gerrymandering substantially easier by creating a strong presumption that facially similar claims should be classified together.  That is not to say gerrymandering is not an issue at all.

Granada Wines' strict approach does not apply to 11 U.S.C. § 1122(b), which statutorily authorizes the separate classification of small unsecured claims subject to court approval.  To approve the separate classification, a court must find the claims are "less than or reduced to an amount that . . . [is] reasonable and necessary for administrative convenience."  11 U.S.C. § 1122(b).  The legislative history of 11 U.S.C. § 1122(b) reflects that the intent was to permit the debtor avoid having to solicit acceptances from a multitude of small unsecured claimholders by simply paying them in full on the effective date.  See S. Rep. No. 989, 95th Cong., 2d Sess. 118 n. 26 (1978); Mickelson v. Leser (In re Leser), 939 F.2d 669, 671 n.7 (8th Cir. 1991) ("'[I]t has

always been assumed that the purpose of § 1122(b) was to allow special treatment for small claims, so that they could be eliminated early and reduce the number of claims that would have to be paid over time.' In re Storberg, 94 B.R. 144, 146 n.2 (Bankr. D. Minn. 1988)").  Nevertheless, courts have held that there is no restriction on creating an impaired administrative convenience class. See, e.g., In re United Marine, Inc., 197 B.R. 942, 949 (Bankr. S.D. Fla. 1996).  Indeed, to the extent that some creditors are being paid well ahead of others, and thus not assuming the risk of plan failure, it *may* be appropriate to apply a discount factor to the administrative convenience class to account for the time-value of money and the relative risk.  See, e.g., In re Nat'l/Northway Ltd. P'ship, 279 B.R. at 25.  Nevertheless, the ability to impair an administrative convenience class potentially raises the specter of gerrymandering and thus requires the court to scrutinize the justification for the separate classification.  This inquiry includes, *inter alia*, consideration of how many claims fall within the class, the individual amounts of those claims, the total amount of claims within the class, the debtor's financial wherewithal to pay them at an accelerated rate, and a present value comparison of the payments to be received by the administrative convenience class and the general unsecured creditors.  See Oxford Life Ins. Co. v. Tucson Self-Storage, Inc. (In re Tucson Self-Storage, Inc.), 166 B.R. 892, 898 (B.A.P. 9th Cir. 1994) (separate classification of four unsecured trade creditors owed $2,124.27 and paid sixty days after the effective date could not be justified as an impaired administrative convenience); In re Autterson, 547 B.R. 372, 396 (Bankr. D. Colo. 2016) (holding the separate classification of one purported administrative convenience claim can never be reasonable and necessary for administrative convenience);  In re New Bride Missionary Baptist Church, 509 B.R. 85, 88 (Bankr. E.D. Mich. 2014) (debtor failed to justify an administrative convenience class where there were only seven unsecured claims other than the large deficiency claim that were neither so small in amount or large in number as to make

a single classification burdensome); In re Nat'l/Northway Ltd. P'ship, 279 B.R. at 24–25 (finding no justification for an impaired administrative convenience class where the proposed class consisted of only one creditor and counsel could not explain how the present value of the payments to the convenience class compared to the payments to be made to the general unsecured creditors).

In the present case, the impaired status of the proposed administrative convenience class (Class 4A) prompted a gerrymandering objection from Phoenix, requiring the Debtor to justify the separate classification.  In response, the Debtor, rather than explaining the rationale and merit behind Class 4A, instead argued that Phoenix lacked standing to object and emphasized Phoenix's inability to vote its unsecured claim.  When the Court took up the issue on its own, noting that the classification scheme appeared to be designed to secure the acceptance of an impaired class, particularly in light of the class composition, the Debtor abandoned the classification entirely, a possibility that was expressly built into the Amended Third Disclosure Statement.  Ultimately, the Debtor's withdrawal of administrative convenience class obviated the need for the Court to rule on the gerrymandering objection, so it is unclear whether the Debtor could have provided an appropriate justification.[29]

Ultimately, the Debtor does not challenge the Court's rulings that the unsecured claims in this case are not legally distinct enough to warrant separate classification.[30]

---

[29] The Court notes, however, that the Debtor's focus on Phoenix's standing to object and Phoenix's voting rights in response to the Court's inquiry does nothing to alleviate the Court's concerns that the Debtor's purpose was to manufacture an impaired accepting class solely in order to cram down Phoenix.

[30] The Court is mindful that these rulings may make it substantially more difficult for a debtor to confirm a Chapter 11 plan in single-asset realty cases, but as observed by the United States Court of Appeals for the Second Circuit:

> [A]lthough Debtor protests that prohibiting it from separating the unsecured claims of the FDIC from those of its trade creditors will effectively bar single asset debtors from utilizing the Code's cramdown provisions, Debtor fails to persuade that a single-asset debtor *should* be able to cramdown a plan that is designed to disadvantage its overwhelmingly largest creditor. Chapter 11 is far better served by allowing those creditors with the largest unsecured claims to have a significant degree of input and participation in the reorganization process, since they stand to gain or lose the most from the reorganization of the debtor.

D. Classification and "Less Favorable Treatment" under Section 1123(a)(4)

On reconsideration, the Debtor attempts to save its proposed separate classification structure by focusing on 11 U.S.C. § 1123(a)(4), which provides:

> (a) Notwithstanding any otherwise applicable nonbankruptcy law, a plan shall—
>
> * * *
>
> > (4) provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest.

11 U.S.C. § 1123(a)(4).  The purpose of this subsection is to ensure equal opportunity for recovery among creditors of the same class.  See In re The Vaughan Co., Realtors, 543 B.R. 325, 338 (Bankr. D.N.M. 2015) ("The 'same treatment' requirement of § 1123(a)(4) operates to protect individual claimants within the same class even when the class has accepted the plan.").  Nevertheless, the Debtor asserts that 11 U.S.C. § 1123(a)(4) authorizes the separate classification of claims that agree to less favorable treatment.  On its face, the Debtor's reliance on the second clause of 11 U.S.C. § 1123(a)(4) to permit "less favorable treatment" of particular claims is misguided because the first clause refers to claims and interests "*of a particular class*."  Under the Amended Third Plan, the unsecured creditors have been placed in three separate classes, not one "*particular class*."  Thus, even assuming Classes 4 and 4A were to vote in favor of the Amended Third Plan, Classes 4 and 4A will not have agreed to less favorable treatment than other creditors in *their particular class*, but rather to the treatment of a creditor in a *completely different class*.

The Debtor cites In re Charles St. African Methodist Episcopal Church of Boston (the "Charles St. decision") in support of its contention.  In that case, the debtor's largest secured

---

In re Boston Post Rd. Ltd. P'ship, 21 F.3d at 483 (emphasis in original).

creditor objected to the classification of a junior lienholder as fully secured because, in reality, the junior lienholder was wholly unsecured.  499 B.R. at 95.  Notably, both the junior lienholder and the class of general unsecured creditors into which the secured creditor wanted the junior lienholder placed voted to accept the debtor's plan.  Id. at 74.  The Court overruled the objection, reasoning that because 11 U.S.C. § 1122(a) does not expressly require that substantially similar claims be classified together, and 11 U.S.C. § 1123(a)(4) permits creditors to accept less favorable treatment than other creditors, the debtor could provide the same treatment to the junior lienholder and general unsecured creditors even if they were in the same class.  Id. at 95-96.  The court distinguished Granada Wines on the basis that the creditor in that case did not assent to disparate, lesser treatment.  Id. at 96.

Contrary to the Debtor's assertions, the Charles St. decision does not support separate classification of the unsecured claims in this case.  The lynchpin of that decision is that separate classification of the junior lienholder from the general unsecured claims did not change the outcome of the case because both classes were impaired and accepted the plan.  The court's invocation of 11 U.S.C. § 1123(a)(4) was to emphasize the fact that these creditors could, and presumably would in light of their votes, agree to the same treatment even if they were in the same class, rendering classification irrelevant.  The critical factor distinguishing the Charles St. decision from the present case is that the voting results were not altered by the classification scheme.  Here, the Debtor's classification of the unsecured claims substantially impacts voting because only two of the three classes are impaired and the dissenting creditor has been disenfranchised.

The Debtor posits that this is a distinction without a difference, asserting that "regardless of whether there is one, two or three classes of unsecured claims, at least one impaired class would

vote for the Plan and the Debtor could proceed to confirmation."[31]  This contention appears premised on the idea that Phoenix, if placed in Class 4 with all other unsecured claims, is still unimpaired and unable to vote due to the proposed payment of its claim on the effective date.  In contrast, the remaining creditors, who must wait for payment, are impaired and may vote to accept the plan.  Ultimately, this argument is flawed because the Debtor is conflating classification and treatment, which is made worse by the Debtor's insistence that the Court assume that the non-Phoenix unsecured creditors, if given the chance, will agree to less favorable treatment than Phoenix *by voting* to accept the plan.  This, in turn, conflates voting with agreement to less favorable treatment by assuming that the non-Phoenix unsecured creditors if placed in a single class with Phoenix could vote at all.

Impairment, and thus voting rights, is determined on a *class by class basis, prior to solicitation*.  See 11 U.S.C. §§ 1123(a)(2), 1125(b).  Indeed, although the holders of allowed claims may accept or reject a plan, 11 U.S.C. § 1126(a), 11 U.S.C. § 1126(f) provides that notwithstanding any other provision of that section, if "a *class* . . . is not impaired under a plan," the class and the claimholders within such class "are conclusively presumed to have accepted the plan," and solicitation of that class is not required.  11 U.S.C. § 1126(f) (emphasis added).  Therefore, unimpaired *classes* are neither solicited nor vote.

Section 1124 of the Bankruptcy Code describes when a class of claims or interests is impaired.  Generally, "a *class* of claims or interests" is presumed to be impaired under 11 U.S.C. § 1124 "unless, with respect to each claim or interest of such class, the plan . . . leaves unaltered the legal, equitable, and contractual rights to which such claim or interest entitles the holder of such claim or interest."  11 U.S.C. § 1124(1) (emphasis added).  In other words, unless the rights

---

[31] Doc. No. 265 at ¶ 7 (footnote omitted).

22

of each claimholder within a class are left unaltered, the entire class will be impaired.  An exception

to that general rule, however, is contained in the introductory clause of 11 U.S.C. § 1124—

"[e]xcept as provided in section 1123(a)(4) of this title."  11 U.S.C. § 1124(a).  Read together,

these sections provide that the agreement or consent by a claimholder to a less favorable treatment

than will otherwise be enjoyed by the class, as permitted by 11 U.S.C. § 1123(a)(4), "removes the

claim from the presumption of impairment" and "the claim of this creditor is deemed unimpaired

under § 1124."  In re K Lunde, LLC, 513 B.R. 587, 595 n.5 (Bankr. D. Colo. 2014).  Put simply,

an agreement to less favorable treatment under 11 U.S.C. § 1123(a)(4) does not create an

impairment, it removes one.

   To illustrate these problems, a single class in a hypothetical plan containing both Phoenix's

unsecured claim and all non-Phoenix unsecured claims is, upon filing, either impaired or

unimpaired.  To gauge the impairment of this hypothetical class, the Court must look to the

proposed treatment.  Section 1123(a)(4) of the Bankruptcy Code requires the plan to "provide the

same treatment for each claim or interest of a particular class, unless the holder of a particular

claim or interest agrees to a less favorable treatment of such particular claim or interest."  Because

the non-Phoenix unsecured claimholders have not yet agreed to less favorable treatment than

Phoenix, and might never do so, 11 U.S.C. § 1123(a)(4) would require that they be afforded the

same treatment as Phoenix—payment in full on the effective date.  Therefore, the *entire class*, not

simply Phoenix, would be unimpaired and would be deemed to have accepted the plan.  11 U.S.C.

§ 1126(f).  Even if the Debtor were to propose a plan providing three separate treatments to sub-

classes of unsecured claims in hopes that the non-Phoenix claimholders would agree to less

favorable treatment, the best treatment enjoyed by a member of the class, i.e., Phoenix, would

define the character of the class and their voting rights under 11 U.S.C. § 1126(f), changing

nothing.  In such a circumstance, agreement under 11 U.S.C. § 1123(a)(4) would not be measured by voting, because the class is deemed to have accepted the plan without solicitation, but by whether the impacted claimholders object to their treatment.

Ultimately, the Debtor's reliance on 11 U.S.C. § 1123(a)(4) to justify separate classification in this case is unavailing.  Section 1123(a)(4) of the Bankruptcy Code can neither be used to impair a subset of claims within an unimpaired class nor artificially disenfranchise a deficiency claimholder.

## V. CONCLUSION

For the reasons stated, the Court finds that the Debtor has failed to demonstrate any intervening change in the controlling law, newly discovered evidence, or a clear legal error that would warrant altering or amending the Court's order under Rule 59(e).  Accordingly, the Motion is denied.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052.  The Court will issue a separate order consistent with this opinion.

ENTERED at Manchester, New Hampshire.


Dated: June 28, 2017                            /s/ Bruce A. Harwood
                                                Bruce A. Harwood
                                                Chief Bankruptcy Judge