UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| In Re: * | Chapter 11 |
| * | |
| Hanish, LLC * | Case No. 16-10602-BAH |
| * | |
| * | Hearing Date:   02/28/2018 |
| Debtor(s) * | Hearing Time:  2:00 p.m. |
| * | |
| * | Objection Deadline:   02/21/2018 |
| \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* | Counteroffer Deadline: 02/21/2018 |
| | at 5:00 p.m. |

**NOTICE OF COUNTER-OFFER PROCEDURES AND HEARING ON MOTION OF CHAPTER 11 DEBTOR-IN-POSSESSION TO SELL SUBSTANTIALLY ALL ASSETS PURSUANT TO 11 U.S.C. §363(b) AND (f) AND ASSUMPTION AND ASSIGNMENT OF OTHER EXECUTORY CONTRACTS LISTED IN PURCHASE AGREEMENT PURSUANT TO 11 U.S.C. §365(a) and (f)**

**INTRODUCTION**

PLEASE TAKE NOTICE that pursuant to 11 U.S.C. § 363, 365 Fed. R. Bankr. R. 2002(a)(2), 6004 and 6006, and LBR 6004-1 and in accordance with the Motion of Hanish, LLC ("Debtor") Debtor-in-Possession To Sell Substantially All Assets Pursuant To 11 U.S.C. §363(B) And (F) And Assumption And Assignment Of Executory Contracts Listed In Purchase Agreement Pursuant To 11 U.S.C. §365(a) and (f) (the " Motion") to GIRI Management, LLC ("Buyer") you are hereby notified of a hearing on the Motion and the opportunity to object and submit counter-offers.  The transactions contemplated in the Motion have the effect of selling Debtor's business operations, a hotel in Hooksett, New Hampshire under the Fairfield by Marriott flag to Buyer pursuant to the terms of the P&S attached to the Motion and the Counter-Offer Procedures described in Exhibit "1" to this Notice (the "Counter-Offer Procedures").  The Debtor, pursuant to this Notice, solicits counteroffers to the transactions contemplated in the Motion.

**THE DEBTOR IS THE OWNER OF A 59 UNIT HOTEL, LOCATED AT 8 BELL AVENUE, HOOKSETT, NEW HAMPSHIRE. (THE 'HOTEL') THE HOTEL OPERATES AS A "FAIRFIELD INN AND SUITES BY MARRIOTT." THE HOTEL IS A 3 STORY 72,000+/- SQUARE FOOT BUILDING WITH AN INDOOR POOL/FITNESS CENTER /BUSINESS CENTER. THIS IS THE DEBTOR'S PRIMARY ASSET. ALL OTHER ASSETS ARE IN THE FORM OF CLAIMS. THE HOTEL IS OPERATING AT THIS TIME.**

1

## SALE BACKGROUND

As stated in greater detail in the Motion, the Debtor has filed a motion with the Court to sell its Hotel to Buyer, a company independent of the Debtor.  The transaction contemplates the following:  Buyer will pay $6,500,000.00 in wired funds (USD) for the assets. Buyer will negotiate a new franchise agreement with Marriott which has the effect of relieving Debtor from any liability under the existing Marriott contract.

Buyer will also take an assignment of leases and contracts and purchase other equipment and similar assets (if any) as part of the purchase price, which will be identified at the sale hearing.

Buyer will close the transactions contemplated by the Agreement within 135 days of the execution of the Purchase and Sale Agreement dated January 10, 2018. (the "P&S").

## BACKGROUND

Prior to the bankruptcy filing on April 26, 2016 ("the Petition Date"), Debtor was formed as a New Hampshire Limited Liability Company to construct, own and operate the Hotel under the "Fairfield Inn and Suites by Marriott" flag, located at 8 Bell Avenue, Hooksett, New Hampshire. The Hotel is operating by and through a management arrangement with Jiten Hotel Management, Inc. ("JHM"), an affiliated company.   JHM is the managing agent for Debtor, which means it manages the Hotel for the Debtor's account, in consideration for a management fee.  There is also a franchise agreement (the "Marriott Agreement") with Marriott International, Inc. ("Marriott") for the franchise at the Hotel.

The construction of the Hotel ran into immediate problems. A burned-out house was buried on the property and the site costs for the project skyrocketed.  In addition, the Hotel opened in 2008 in the midst of a recession.  The Hotel has had the challenge of climbing out of its difficulties, and it has done so.

 The Hotel is a management success. Due to Debtor's efforts and the efforts of JHM and its employees, the Hotel has won many awards from Trip Advisor, Booking.com, and Marriott (Marriott 2012 Silver Award and 2014 Gold Award).

JHM is owned by Nayan Patel, one of the owners of the Hotel. All Management Fees during the case have been approved in budgets approved by the Court.

## MARRIOTT DEBTOR'S FRANCHISOR

Marriott entered into the Marriott Agreement with the Debtor.  The contract provides *inter alia* for the payment of franchise fees in exchange for use of the Marriott flag and marks (i.e., the name "Fairfield Inn and Suites by Marriott").  The franchise fee is current at this time.  There are other obligations due from the Debtor to Marriott, including the property improvement

plan (the "PIP") which obligates the Debtor to upgrade the facility every five to seven years under the Marriott Agreement. A PIP was recently completed by the Debtor.

### PHOENIX, DEBTOR'S SECURED LENDER

Phoenix NPL, LLC ("Phoenix NPL", a Delaware limited liability company, purchased the loans underlying the Hotel and the Debtor evidenced by, among other things, a Construction Loan Agreement dated October 5, 2007 (the "Construction Loan Agreement"), a Promissory Note in the original principal amount of $5,900,000 also dated October 5, 2007 (the "2007 Note") and a Promissory Note dated March 6, 2009 in the original principal amount of $450,000 (the "2009 Note" and collectively with the 2007 Note the "Loans") from the Federal Deposit Insurance Corporation (the "FDIC"), as Receiver for The National Republic Bank of Chicago, the original lender to Hanish, on or about February 20, 2015. Thereafter, Phoenix NPL assigned the Loans to Phoenix REO, LLC ("Phoenix REO" or "Phoenix" or "Lender") on or about September 2, 2015. The 2007 Note is secured by a Security Agreement, Assignment of Rents and Mortgage recorded in the Merrimack County Registry of Deeds. The 2007 Note is guaranteed by Nayan Patel. The 2009 Note is not guaranteed by Nayan Patel.

The loan matured. Phoenix refused to extend it.

Phoenix REO moved for a receiver to take over the Hotel in the Merrimack (State of New Hampshire) Superior Court. That request was denied. In the order denying the request the Court expressed concern that if a receiver was appointed, the franchise with Marriott could be lost. The Court also noted the Hotel was managed properly stating "this is not the case where the defendant's financial distress stems from mismanagement of the Hotel." Prior to the Petition Date, Phoenix had scheduled a foreclosure of the Hotel and refused to delay it. Phoenix also sued Nayan Patel as the guarantor of the 2007 Note and restrained the transfer of substantial assets of his and obtained attachments against his other assets.

### THE CHAPTER 11

The Chapter 11 was precipitated solely to stop the foreclosure. There were no other operational or debtor-creditor reasons for the filing. All other matters would have been worked out in the ordinary course, absent the foreclosure efforts. The case was commenced on April 26, 2016 (the "Petition Date"). The first order of business after stopping the foreclosure was to obtain the emergency use of cash collateral, which Debtor obtained by Court order. After obtaining such usage, Debtor began negotiating with its Lender for the consensual use of cash to use as a platform to engage the lender in settlement discussions and develop consensual means to file this plan of liquidation (the "Plan"). Debtor and Lender reached agreement on the use of cash collateral which provides for replacement liens, $20,000.00 increased to $30,000.00 a month in cash payments and other protections

### CURRENT CIRCUMSTANCES AND ASSETS

Debtor has operated successfully during the Chapter 11. It has dramatically increased revenue which has allowed it to increase adequate protection payments to Phoenix. To date

3

Phoenix has been paid approximately $460,000.00 in adequate protection payments reducing Phoenix's pre-petition claim from $6,732,462.02 to $6,272,462.02. Phoenix's claim continues to be paid $30,000 per month as further adequate protection payments are made.  Phoenix is the dominant creditor in the case.  The other creditors in the case total approximately $100,000.00 against Phoenix's claim of $6.272 million dollars.  At a sales price of $6.5 million after deducting real estate taxes, transfer taxes, US Trustee fees and other closing costs and the realtor's commission (the "Net Proceeds"), Phoenix should be paid approximately $6.2 million dollars at the time of closing and its claim should be less than $6.2 million at that time.  Its claim should be paid off.  It will have no further claim against the Debtor (i.e. no claim against cash on hand or the $200,000.00 due to be repaid by JHM).  To the extent more is recovered from the sale's proceeds than the total pre-petition claim of Phoenix, Phoenix will be paid additional funds because it will be oversecured. It being the intention of the Debtor to pay Phoenix all Net Proceeds of the sale provided the Net Proceeds are first applied against the outstanding obligations under the 2007 Note before any amount is applied against the outstanding obligations of the 2009 Note. Phoenix is expected to vote in favor of the Plan.  Under the Plan, provided the sale closes, Phoenix will not participate in the preference recovery or the cash on hand.

## THE OTHER CREDITORS

Other "general" creditors, which total $100,000.00, will be paid from the recovery of a $200,000.00 preference claim due from JHM.  The approximate dividend, reduced by administrative expenses of approximately $100,000.00, will be 33% on the dollar. There also may be some funds available from any cash on hand left in the Debtor after payment of outstanding post-petition bills. These funds would also be distributed to general creditors. Phoenix will not participate in such distribution.

## THE MECHANISM FOR PAYMENT

Payments shall be made from the Net Proceeds and the preference recovery through a liquidating plan of reorganization which will parrot this motion.  The liquidating plan will be filed as soon as a final buyer is obtained. Notwithstanding the foregoing, the order approving the sale (the "Sale Order") shall provide that if the closing of the sale occurs before confirmation of the Plan, Phoenix shall be paid at the closing pursuant to the Sale Order.

## THE SALE

The Purchase Price of the Hotel is $6,500,000.00 which amount may increase if the original buyer is outbid at the sale hearing.  There is no financing contingency to sale.  The only contingencies to closing are Marriott approval of a new franchise and a due diligence period of forty five (45) days that runs from the approval of the bid procedures expected on January 24, 2018.

## BUYER

The Buyer is an arms length purchaser of the Debtor.  There are other potential bidders who may bid at the sale. The Buyer, Debtor and management are fully supportive of the auction process and accepting the highest and best offer.

## THE ASSETS ARE SUBJECT TO THE FOLLOWING LIENS

The Assets are subject to an all asset lien of Phoenix in the amount of approximately $6.272 million dollars at the present time.

## VALUE

Debtor hired a specialist broker in the industry, O'Connell Management Group, LLC. The Broker is a national brokerage firm specializing in the Management industry. The Broker marketed the property in the following way:  e mail blast to more than 4000 recipients which resulted in 50 responses, a number of showings, and at least 4 offers. The property has been extensively marketed and the Debtor is confident that the process has created the environment for competitive bidding and the highest and best offer.

## COMPETING BIDDERS

Debtor will solicit offers from competing bidders and has submitted a Bid Procedures Motion with accompanying detailed documentation of the proposed Sale.  Any competing bidder, upon execution of the Debtor's confidentiality agreement, can obtain access to Debtor's financial and other proprietary information by requesting such information from the undersigned.

## OTHER OPTIONS TO A SALE AND EXIGENT CIRCUMSTANCES

There are no viable options other than a sale.  Debtor has proposed two 100% plans to pay Phoenix; Both were rejected by the Court. Phoenix has a blocking position. The Plans provided payment over time.  This plan divests the Debtor from its Hotel in order to pay Phoenix in cash now.  Debtor is aware of no other options other than a sale to pay Phoenix in the short term.

## DISTRIBUTION OF SALES PROCEEDS

Net Proceeds from the sale with be distributed to Phoenix either under the Plan, if confirmation occurs first or at closing of the sale if closing occurs first.  Payments to other creditors will be through the plan.  All payments are expected to be completed within six months of the date of this motion.

## NOTICE AND COUNTER-OFFER PROCEDURES

Copies of the Notice of Hearing and Bid Procedures on this Motion have been served, either by ECF or by first class mail, as indicated in the Debtor's Certificate of Service, upon the

United States Trustee, all creditors in this case, the Debtor, the lienholders, and on anyone who has expressed an interest in purchasing the Hotel through direct contact or as provided by the Broker. The Counter-Offer Procedures are attached as Exhibit 1 to this Notice.

## PROPERTY TO BE SOLD FREE AND CLEAR OF LIENS

Pursuant to the P&S, all property to be sold under the Agreement shall be sold free and clear of all liens, claims, encumbrances and interests with such liens and encumbrances attaching to the proceeds of the sale pursuant to 11 U.S.C. §363(b) and (f) subject to the limitations of §552(b) with regard to liens in after-acquired property and other applicable law.
As part of the P&S, the executory contracts, if any are chosen, of the Debtor will be assumed and assigned to Buyer pursuant to 11 U.S.C. 365(f) provided that all requirements of the Bankruptcy Code are satisfied with regard to the assumption and assignment of contracts and all other matters.

## THE DEADLINE FOR OBJECTIONS TO THE SALE MOTION AND HEARING THEREON

**A HEARING ON THE MOTION, ANY OBJECTIONS THERETO AND ANY COUNTEROFFERS TO THE P&S, IS SCHEDULED TO TAKE PLACE ON FEBRUARY 28, 2018 AT 2:00 P.M. (THE "HEARING") BEFORE THE HONORABLE BRUCE HARWOOD, CHIEF BANKRUPTCY JUDGE, UNITED STATES BANKRUPTCY COURT FOR THE DISTRICT OF NEW HAMPSHIRE (THE "COURT"). ANY PARTY WHO HAS FILED AN OBJECTION TO THE SALE MOTION OR COUNTER OFFER FOR THE PURCHASE OF THE ASSETS IS EXPECTED TO BE PRESENT AT THE HEARING, FAILING WHICH THE OBJECTION MAY BE OVERRULED OR THE COUNTEROFFER STRICKEN.**

**Any objection to the Motion or any counteroffer must be stated in writing and filed with the Clerk, United States Bankruptcy Court, Warren B. Rudman Courthouse, 55 Pleasant Street, Concord, New Hampshire 03301 on or before February 21, 2018 at 5:00 p.m.** ("Counteroffer/Objection Deadline").

A copy of any objection or counteroffer must be also served upon the undersigned counsel to the Debtor so as to be received on or before the Counteroffer/Objection Deadline. Any objection must state with particularity the grounds for the objection and the interest that the objecting party has in these proceedings, and shall be governed by Fed. R. Bankr. P. 9014.

## AUCTION PROCEDURES

Through this Notice, the Debtor solicits counteroffers for the purchase in accordance with the terms of the Counter-Offer procedures approved by the Court. You may receive a complete copy of the Bid Procedures Motion, the Order approving the Bid Procedures Motion, or Purchase and Sale Agreement and other materials (subject to entry into a confidentiality agreement) by contacting the Debtor's counsel at the address listed at the end of this Notice.

6

                                             Respectfully submitted,

                                             Hanish, LLC
                                             Chapter 11 Debtor-In-Possession
                                             By its attorneys,
                                             Notinger Law, PLLC

Dated: January 11, 2018       By:    /s/ Steven M. Notinger
                                             Steven M. Notinger (BNH 03229)
                                             7A Taggart Drive
                                             Nashua, NH 03060
                                             (603) 417-2158
                                             steve@notingerlaw.com